IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-208

 No. COA19-962-2

 Filed 18 May 2021

New Hanover County No. 17 CVS 003743

WILLIAM E. BENSON, III, and wife, MONIQUE L. RIBANDO, Plaintiffs,

 vs.

R. LEE PREVOST, and wife SCHARME S. PREVOST, Defendants and Third-Party
Plaintiffs,

 vs.

MICHAEL S. BURNHAM, DANIEL SMITH, and wife, DENISE B. SMITH, Third-
Party Defendants.

 Appeal by Plaintiffs from orders entered 25 April 2019, 23 May 2019, and 29

May 2019, by Judge Paul M. Quinn in New Hanover County Superior Court. Heard

in the Court of Appeals 25 August 2020. Original opinion filed on 31 December 2020

was withdrawn and Motion to Reconsider granted on 4 March 2021.

 Fox Rothschild LLP, by Robert H. Edmunds, Jr., and Elizabeth Brooks Scherer,
 and Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson,
 Jr., and Jennifer L. Carpenter, for Plaintiff.

 Shipman & Wright, LLP, by Gary K. Shipman for Defendants.

 Block, Crouch, Keeter, Behm, & Sayed, LLP, by Auley M. Crouch, III, for Third-
 Party Defendants.

 DILLON, Judge.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 I. Background

¶1 This matter involves a real property dispute between next-door neighbors who

 own two lots within a three-lot subdivision originally developed by Third-Party

 Defendants (the “Developers”). The Developers developed three adjacent waterfront

 lots (Lots 1-3) at Wrightsville Beach, along with a dock extending into the water from

 the lots. The dock leads to three boat slips (Slips A-C). Prior to selling any lot, the

 Developers filed a map depicting a driveway easement over a portion of Lot 1 for the

 benefit of Lot 2. The Developers eventually sold each lot, with each lot owner entitled

 to use a specific boat slip. This matter concerns two disputes between the current

 owners of Lot 1 and Lot 2 regarding the scope of the driveway easement and

 ownership of boat slips.

¶2 Defendants R. Lee Prevost and Scharme S. Prevost own Lot 2. They purchased

 Lot 2 from the Developers in 2015. The conveyance included rights to the driveway

 easement located on Lot 1 and also exclusive use of Slip C. There is evidence that

 Defendants thought they were receiving Slip A. Slip A is the superior boat slip in

 that it had been improved with a boat lift, whereas Slip C had not.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶3 The following year, in 2016, Plaintiffs William E. Benson and Monique L.

 Ribando purchased Lot 1 from the Developers.1 Plaintiffs’ interest in Lot 1 was, of

 course, subject to the driveway easement in favor of Defendants as owners of Lot 2.

 Though Plaintiffs’ written contract with the Developers indicated that they would

 also receive Slip C (the boat slip that the Developers had already, though perhaps

 inadvertently, conveyed to Defendants the prior year) at closing, Plaintiffs were

 deeded exclusive use of Slip A, the slip with the boat lift.

¶4 A dispute subsequently arose when Plaintiffs noticed that Defendants were

 parking vehicles within the driveway easement on Plaintiffs’ Lot 1 rather than simply

 using the easement for ingress and egress to Lot 2. Also, a dispute arose regarding

 which party owned which boat slip.

¶5 Plaintiffs brought this action to resolve the two disputes. After a hearing on

 the matter, the trial court entered summary judgment in favor of Defendants on both

 issues, concluding that Defendants could park cars within the driveway easement

 and that Defendants were the rightful owners of Slip A—the better boat slip—

 1 An affiliate of the Developers actually conveyed Lot 1 to Plaintiffs.In September
 2015, a month after selling Lot 2/Slip C to Defendants, the Developers conveyed Lot 1/Slip A
 to an affiliate entity in anticipation of building the home on Lot 1. This affiliate entity
 conveyed Lot 1/Slip A to Plaintiffs. However, for ease of reading, the “Developers” refers
 either to the Developers or its affiliate, depending on the context.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 notwithstanding the deeds. The trial court also awarded Defendants attorney’s fees.

 Plaintiffs appeal.

 II. Analysis

¶6 Summary judgment is appropriate when there is no genuine issue of material

 fact; and we review a summary judgment order de novo. Daughtridge v. Tanager

 Land, LLC, 373 N.C. 182, 186, 835 S.E.2d 411, 415 (2019); N.C. Gen. Stat. § 1A-1,

 Rule 56(c) (2015). We address the two property issues and the costs and attorney’s

 fees issue in turn.

 A. Driveway Easement

¶7 The parties dispute the “scope” of the parties’ rights to use the driveway

 easement (the “Easement”) located on Lot 1.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶8 In 2015, just prior to conveying any of the lots, the Developers recorded the

 map below (the “Map”), which depicts the driveway easement shaded on Lot 1.

 The recording of this Map did not actually convey anything, as both the dominant

 estate (Lot 2) and the servient estate (Lot 1) were still held by the same owner.

¶9 On 28 August 2015, shortly after the Developers recorded the Map, the

 Developers conveyed Lot 2 (the lot on the right with an existing home as depicted on
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 the Map) to Defendants. The deed contained the following language, which also

 granted Defendants rights to the Easement depicted on the recorded Map:

 Together with and subject to a Driveway Easement
 [located on Lot 1], shown as “Proposed Driveway Easement
 Area = 1050 S.F.” [as recorded on the Map].

¶ 10 At the time Defendants purchased Lot 2, Lot 1 had not yet been developed.

 The garage area of the existing home on Lot 2 faced (and continues to face) the

 Easement, as shown in the photographs below. These photos were offered as exhibits

 at the summary judgment hearing and were taken years later, after Lot 1 had been

 fully developed. The area depicted as the “Driveway Easement” in these photos does

 not appear to fully cover the Easement area as depicted on the Map.

¶ 11 In 2016, the Developers constructed a home on Lot 1 and sold it to Plaintiffs.

 Developers had originally planned to design a home on Lot 1 such that the

 homeowner would also use the Driveway Easement to access the garage area.

 However, the Developers ultimately decided on a design with a garage on the other

 side, opposite the Easement, accessed by a different driveway (unrelated to the

 dispute). The photos below show that Lot 1, as developed, contains a privacy wall

 adjacent to the part of the Easement that is now paved, a “back gate” which leads

 into Lot 1’s back yard, and a “side gate” which accesses the home on Lot 1.
IN RE J.N. & L.N.

 2021-NCCOA-208

Opinion of the Court
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 12 Since purchasing Lot 2 in 2015, Defendants have made use of the Easement to

 access their garages and parking pad on Lot 2. They have also occasionally parked

 cars within the Easement. Sometime after purchasing Lot 1, Plaintiffs began

 protesting Defendants’ parking of vehicles within the Easement, contending it blocks

 their ability to access their back gate. For their part, Defendants contend that

 Plaintiffs have no right to drive vehicles on the Easement to access the back gate, as

 this use would interfere with Defendants’ Easement rights.

¶ 13 The trial court entered summary judgment in favor of Defendants on this issue.

 The court determined that Defendants and their successors “are entitled to make

 reasonable use of the [ ] Easement [as recorded on the Map]” and that the parking of

 vehicles is a reasonable use. Further, the trial court determined that Plaintiffs and

 their successors could only use the Easement to access their side and back gates by

 foot and not by a vehicle. For the reasons below, we affirm as modified herein.

¶ 14 An easement is an interest in land and is subject to the statute of frauds. See

 N.C. Gen. Stat. § 22-2 (2015). An easement, like any other conveyance, “is to be

 construed in such a way as to effectuate the intention of the parties as gathered from

 the entire instrument” and not from detached portions. Higdon v. Davis, 315 N.C.

 208, 215-16, 337 S.E.2d 543, 547 (1985) (emphasis added).

¶ 15 Here, the location of the Easement in favor of Defendants is expressly defined

 by the Map, referenced in the recorded deed from the Developers to Defendants. See
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 Collins v. Land Co., 128 N.C. 563, 565, 39 S.E. 21, 22 (1901) (“[A] map or plat, referred

 to in a deed, becomes a part of the deed as if it were written therein[.]”). When

 Plaintiffs purchased Lot 1, they took title subject to Defendants’ Easement rights as

 recorded. Borders v. Yarbrough, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953)

 (“Grantees take title to lands subject to duly recorded easements which have been

 granted by their predecessors in title.”).

¶ 16 The Map referenced in the Developers’ deed to Defendants unambiguously

 marks the specific location of the Easement. The Easement is depicted as the shaded

 area on Lot 1, adjacent to its shared property line with Lot 2. The Map describes the

 shaded area to be “Area 1,060 S.F.”, which appears to be accurate: the area forms a

 trapezoid, with the average length from the street being slightly over fifty (50) feet

 and the average width being slightly over twenty (20) feet. Neither party makes any

 argument that the location of the Easement is not as described on the Map or has

 been relocated. See Cooke v. Electric Membership Corp., 245 N.C. 453, 458, 96 S.E.2d

 351, 354 (1957). Therefore, the location of the Easement is as described on the Map.

¶ 17 There is no clear language, however, defining the scope of Defendants’ rights

 to use the Easement beyond the language labeling the shaded area on the Map as a

 “Proposed Driveway Easement” and the reference in the deed conveying the

 Easement rights as a “Driveway Easement.”
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 18 Our task is to determine whether the intent of the parties regarding the

 Easement’s scope—specifically whether the scope included the right to park vehicles

 in the Easement—can be gleaned from these recorded instruments. We note that our

 Court has instructed that if the language in an easement is ambiguous as to its scope:

 [T]he scope may be determined by reference to the
 attendant circumstances, the situation of the parties, and
 by the acts of the parties in the use of the easement
 immediately following the grant [but that] if the
 conveyance is silent as to the scope of the easement,
 extrinsic evidence is inadmissible as to the scope or extent
 of the easement. However, in the latter situation, a
 reasonable use is implied.

 Swaim v. Simpson, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786-87 (1995). Also, our

 Supreme Court has instructed that an easement extends to all “uses directly or

 incidentally conducive to the advancement of the purpose for which the right of way

 was acquired, and the owner retains merely the title in fee, carrying the right to make

 such use as in no way interferes with the full and free exercise of the easement.”

 Light Co. v. Bowman, 229 N.C. 682, 688, 51 S.E.2d 191, 195 (1949) (citation omitted).

¶ 19 It is unambiguous that the purpose of the easement is to allow Defendants to

 use the Easement as a “driveway.” What is less clear is whether “driveway” use

 includes the right to park vehicles in the Easement or simply the right to use the

 driveway for ingress and egress between the public road and Lot 2. There is no

 express language which restricts the use of the driveway easement for “ingress and
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 egress.” We note that many driveways are used by their owners to park cars, while

 others are used generally only for just ingress and egress.

¶ 20 Looking at the Map as a whole, we conclude that the trial court correctly

 determined that the scope of Defendants’ rights includes the right to park vehicles in

 parts of the Easement area. We are persuaded in large part by the fact that the

 Easement area, as defined on the Map, is on average over twenty (20) feet wide. We

 are also persuaded by the fact that the Easement is short in length and located

 immediately adjacent to Defendants’ home, as shown on the Map. A narrower

 driveway easement would suggest an intent by the grantor that its scope be limited

 to ingress and egress. But the creation of a driveway easement that is approximately

 twenty (20) feet wide to be used by the owner of a vacation home, especially where

 the easement is close to the home, suggests an intent that the “driveway” use also

 include the right to park cars, at least on occasion. This right, though, does not extend

 to the parking of cars in a way that obstructs the entire width of the Easement as

 shown on the Map, as such use would deprive the owners of the servient estate (Lot

 1) of the opportunity to make reasonable use of that part of their property.

¶ 21 There is plenty of room within the Easement as depicted on the Map for

 Defendants to park vehicles and still leave room for Plaintiffs to use the Easement

 for their ingress and egress to the back part of Lot 1. We note, however, that it

 appears from the photos that after conveying Easement rights to Defendants, the
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 Developers placed permanent obstructions within the Easement area, as depicted on

 the Map, when they developed the house on Lot 1. That is, the easement area as

 depicted in the photos appears smaller than the Easement depicted on the Map. For

 instance, the boundary at the end of the Easement is depicted on the Map as being

 approximately fourteen (14) feet long. That boundary as depicted on the aerial photo,

 though, appears much shorter (comparing it to the width of the truck in the photo).

 It appears from the photos that after conveying Easement rights to Defendants, the

 Developers built the privacy wall within the Easement, an area the owner of Lot 1

 could have used for its own ingress and egress to other portions of Lot 1.

¶ 22 We affirm the trial court’s determination that the parking of cars by

 Defendants in the Easement is generally allowed. Our Supreme Court instructs,

 though, that “[t]he reasonable use and enjoyment of an easement is to be determined

 in the light of the situation of the property and the surrounding circumstances [and]

 what is a reasonable use is a question of fact [for a jury].” Shingleton v. State, 260

 N.C. 451, 457, 133 S.E.2d 183, 187 (1963). Therefore, the parking of cars by

 Defendants in the Easement must be reasonable. And it may be that a jury, for

 instance, may deem Defendants’ parking of cars in the Easement, while leaving the

 parking pad and garages on Lot 2 vacant, an unreasonable use. (The trial court made

 no ruling regarding the extent that Defendants may utilize the Easement for parking,

 as such questions might be for a jury to resolve, based on specific facts.)
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 23 We modify the trial court’s determination regarding Plaintiffs’ rights to use the

 Easement, striking the portion that Plaintiffs may never drive a vehicle over the

 Easement to access the back of their property, but may only use the Easement for

 pedestrian traffic. To be sure, Plaintiffs may not use the Easement in a way that

 interferes with the rights of Defendants to use the Easement for ingress and egress

 and to park vehicles. However, Plaintiffs, as the owners of the servient estate, “may

 [still] use the land in any manner and for any purpose which does not interfere with

 the full and free use of the easement[.]” Harris v. Southern Railway Co., 100 N.C.

 App. 373, 378, 396 S.E.2d 623, 626 (1990). There may be instances where using the

 Easement for vehicle ingress and egress to access the back or side gate of Lot 1 would

 not interfere with Defendants’ enjoyment of their Easement rights. For instance,

 such use may be reasonable during times when Defendants are not parking cars in

 the Easement area.2 Accordingly, we reverse that portion of the order and hold that

 Plaintiffs may use the land in any manner which does not interfere with Defendants’

 enjoyment of the Easement, which may include at times, the right to drive vehicles

 on the Easement to access their back and side gates.

 B. Boat Slips

 2 We note that, assuming the privacy fence is actually within the Easement,
 Defendants have made no argument or claim that the decision by Plaintiffs’ predecessor in
 title to construct the fence interferes with their ability to use the Easement.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 24 The second issue involves a dispute between Plaintiffs and Defendants as to

 the ownership of Slip A and Slip C. Though Slip C was deeded to Defendants by the

 Developers in 2015, Defendants claim that this was a mistake. Defendants do not

 contend that Plaintiffs, who did not purchase Lot 1 until the following year, knew

 about the mistake when the Developers “mistakenly” conveyed Slip C to Defendants

 or that Plaintiffs were otherwise involved at that time. But Defendants do claim, and

 there is evidence to show, that Plaintiffs came to know that a mistake might have

 been made when they closed their purchase of Lot 1/Slip A with the Developers.

¶ 25 The timeline relevant to this dispute is as follows:

¶ 26 In July 2015, Defendants entered into a written contract to purchase Lot 2,

 with exclusive rights to Slip A, the one with the boat lift.

¶ 27 On 25 August 2015, before closing on the sale of Lot 2 with Defendants, the

 Developers recorded covenants which stated, “Boat Slip A has been made

 appurtenant to and runs with the land of Lot 1 [and NOT Lot 2] . . . Boat Slip C has

 been made appurtenant to and runs with the land of Lot 2.” This recorded instrument

 conflicts with the July purchase contract.

¶ 28 Three days later, on 28 August 2015, Defendants closed their purchase of Lot

 2 with the Developers. The deed of conveyance provided that Defendants were

 receiving Lot 2 “[t]ogether with Boat Slip C[,]” which was consistent with the

 covenants recorded days before, but which conflicted with Defendants’ purchase
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 contract. Defendants, though, began using Slip A, the boat slip with a lift,

 notwithstanding that they had been deeded Slip C.

¶ 29 In 2016, the Developers sold Lot 1 to Plaintiffs. There is evidence that before

 closing, Plaintiffs believed that they were getting Slip C, the inferior slip. However,

 they came to learn that Developers had already conveyed Slip C to Defendants,

 though perhaps inadvertently. They came to learn that, as a matter of public record,

 the Developers no longer owned Slip C, but still owned Slip A. But Plaintiffs told the

 Developers at closing that they wanted to proceed with the closing and “keep the deed

 [conveying Slip A to them] as it was.” Accordingly, the Developers executed a deed

 conveying Lot 1 to Plaintiffs, together with “the exclusive use of Slip A[.]”

¶ 30 There is evidence that after closing, Plaintiffs made use of the inferior Slip C,

 as Defendants were already making use of Slip A. However, when Defendants

 refused to stop parking cars in the Easement, Plaintiffs began protesting that

 Defendants were using the wrong boat slip.

¶ 31 Plaintiffs brought this action, not only to determine the parties’ rights with

 respect to the Easement, but also for an order declaring them to be the owners of Slip

 A. The trial court, though, granted summary judgment in favor of Defendants on this

 issue. For the reasoning below, we reverse the trial court and conclude that Plaintiffs

 are entitled to the boat slip which was deeded to them by the Developers.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 32 With the passage of the Connor Act in 1885, our General Assembly made North

 Carolina a pure race state. N.C. Gen. Stat. § 47-18(a) (2015). Under our pure race

 recording statute, “[a]s between two purchasers for value of the same interest in land,

 the one whose deed is first registered acquires title.” Bourne v. Lay & Co., 264 N.C.

 33, 35, 140 S.E.2d 769, 771 (1965).

¶ 33 There is evidence that there were conversations about the “flipped” boat slips

 between the attorneys for Plaintiffs and the Developers prior to closing, and that they

 agreed to “straighten out” the boat slip issue later. When Plaintiffs were closing their

 purchase of Lot 1 in 2016, they were aware that the Developers had intended to

 convey Slip A to Defendants the prior year, but there was no deed in the Developers’

 chain of title to indicate that they had yet parted with Slip A. For their part,

 Defendants had not filed any litigation—which could have included the filing of a

 notice of lis pendens—to reform their deed from the Developers, something they could

 have done to protect their interests. See Hill v. Pinelawn Memorial Park, Inc., 304

 N.C. 159, 163, 165, 282 S.E.2d 779, 782, 783 (1981) (finding “[i]f [a purchaser] finds

 no record of [a prior conveyance], even if he knows there has been a prior conveyance,

 he may record his deed with the assurance that his title will prevail” and “[w]hile

 actual notice of another unrecorded conveyance does not preclude the status of

 innocent purchaser for value, actual notice of pending litigation affecting title to the

 property does preclude such status.”); see also Rollins v. Henry, 78 N.C. 342, 351
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 (1878) (“When a person buys property pending an action of which he has notice, actual

 or presumed, in which the title to it is in issue, from one of the parties to the action,

 he is bound by the judgment in the action[.]”). Defendants argue that they had no

 knowledge of the error in the deed before Plaintiffs told them after Plaintiffs’ closing;

 however, they were on constructive notice as the covenants were recorded by the

 Developers days prior to Defendants’ closing and deed recording.

¶ 34 Defendants argue that boat slips, themselves, are not interests in real estate

 and, therefore, not subject to the Connor Act. We disagree. It is true that the land

 under navigable waters in North Carolina—including the land under which

 Plaintiffs’ and Defendants’ boats are situated when tied to the dock—belong to the

 State of North Carolina. See Miller v. Coppage, 261 N.C. 430, 435, 135 S.E.2d 1, 5

 (1964). But an interest in land that abuts navigable water—such as Lots 1 and 2—

 includes certain littoral or riparian rights to that navigable water. See Jones v.

 Turlington, 243 N.C. 681, 683, 92 S.E.2d 75, 77 (1956). These rights may include the

 right to construct docks, piers, and the like from one’s land to access the water which

 might otherwise interfere with the public’s right to use some portion of the navigable

 water adjacent to the owner’s land:

 [A] littoral proprietor and a riparian owner, as is
 universally conceded, have a qualified property in the
 water frontage belonging, by nature, to their land, the chief
 advantage growing out of the appurtenant estate in the
 submerged land being the right of access over an extension
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 of their water fronts to natural water, and the right to
 construct wharves, piers, or landings, subject to such
 general rules and regulations as the Legislature . . . may
 prescribe for the protection of public rights in rivers or
 navigable waters.

 Capune v. Robbins, 273 N.C. 581, 588, 160 S.E.2d 881, 886 (1968) (citations and

 quotation marks omitted).

¶ 35 In the present case, the Developers, prior to conveying Lots 1 and 2,

 constructed a dock, including three slips from which boats could access the dock, in

 the exercise of their riparian rights to their land. The Developers then subdivided

 their land and the rights to access the dock. The Developers conveyed Lot 2 with the

 right to access the dock at Slip C to Defendants, thereby retaining Lot 1 and the right

 to access the dock at Slip A. The Developers subsequently conveyed Lot 1, which

 included the Developers’ remaining riparian rights to access the dock at Slip A. As

 such, we hold that the ownership of each boat slip (which includes the right to access

 the dock at a certain point) is part of the littoral or riparian rights associated with

 the Lots and is therefore an interest in land subject to the Connor Act.

¶ 36 Additionally, Defendants argue that the Connor Act does not apply because

 Plaintiffs did not purchase their rights to Slip A for value. Indeed, the Conner Act

 protects lien creditors and “purchasers for a valuable consideration.” N.C. Gen. Stat.

 47-18. However, the record shows that Plaintiffs paid $1.9 million for Lot 2, including

 use of Slip A. For instance, the deed from the Developers shows revenue stamps
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 reflecting that this price was paid. The parties conceded this point, and there is

 nothing to indicate that Slip A was given to them. At the very least, Plaintiffs gave

 up their “right” to receive Slip C at closing (that they had originally been promised)

 to receive Slip A, and Slip C has significant value. King v. McRacken, 168 N.C. 621,

 624, 84 S.E. 1027, 1029 (1915) (“The party assuming to be a purchaser for valuable

 consideration must prove a fair consideration, not up to the full price, but a price paid

 which would not cause surprise or make any one exclaim, ‘He got the land for

 nothing!’ ”).

¶ 37 We are unpersuaded by the Developers’ argument which relies on their

 evidence that Plaintiffs orally promised that they would trade boat slips after their

 closing, to correct the mistake made when the Developers conveyed the wrong slip to

 Defendants the year before. The evidence is conflicting. The Developers could have

 required Plaintiffs to enter some express written agreement to make the transfer, but

 they did not. Defendants could have protected themselves by filing an action against

 the Developers and then giving notice to the public (including Plaintiffs) of such

 pending action by recording a notice of lis pendens prior to Plaintiffs’ purchase of Lot

 1/Slip A, ten (10) months later, but they did not. All we have are allegations of verbal

 representations.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 C. Costs and Attorney’s Fees3

¶ 38 Finally, Plaintiffs appeal the award of costs and attorney’s fees to Defendants

 and the Developers. As we have reversed the trial court’s order granting summary

 judgment in favor of Defendants and the Developers on the issue of the boat slips, we

 must reverse the trial court’s order granting these parties costs and attorney’s fees

 as they are no longer a prevailing party. Further, the trial court awarded attorney’s

 fees under N.C. Gen. Stat. § 6-21.5 finding, inter alia, that Plaintiffs “knew, or

 reasonably should have known, that there was a complete absence of a justiciable

 issue of either law or fact raised by them in their verified complaint[;]” “[t]here was a

 complete absence of a justiciable issue by the Plaintiffs in this case[;]” “Plaintiffs’

 claims in this case were frivolous[;]” and “not supported by a good faith argument for

 an extension, modification or reversal of existing law.” To the extent these are

 findings of fact and not conclusions of law, they are not supported.

¶ 39 Further, the trial court’s conclusions of law that: “Plaintiffs’ claims in this case

 were frivolous[;]” “contained no justiciable issue[;]” “Plaintiffs persisted in litigating

 this case after the point when they and/or their counsel knew or should have known

 that their Complaint no longer contained a justiciable issue[]” and “were not

 3 The trial court has not entered any order on Plaintiffs’ request for attorney’s fees in

 accordance with N.C. Gen. Stat. § 6-21.5 (2015) and nothing in this opinion should be
 interpreted as a forecast by this Court.
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

 supported by a good faith argument for an extension, modification or reversal of

 existing law” are not supported by the facts in this case. Nothing in this case or the

 arguments of counsel for either side can be considered “frivolous” or “not supported

 by a good faith argument for an extension, modification or reversal of existing law.”

 We reverse the trial court’s award of costs and attorney’s fees.

 III. Conclusion

¶ 40 This matter concerns a recorded driveway easement and interests in boat slips

 between next door neighbors who never entered into a contract with each other, but

 who purchased their lots/slips from a common owner. There is conflicting evidence

 about what might have been said at various times regarding these instruments, but

 we must remember:

 There is no other stake for which men will play so
 desperately. In men and nations there is an insatiable
 appetite for lands, for the defence or acquisition of which
 money and even blood sometimes are poured out like
 water. The evidence of land-title ought to be as sure as
 human ingenuity can make it. But if left in parol, nothing
 is more uncertain, whilst the temptations to perjury are
 proportioned to the magnitude of the interest.

 The infirmity of memory . . . the honest mistakes of
 witnesses, and the mis-understanding of parties, these are
 all elements of confusion and discord which ought to be
 excluded[.]

 Moore v. Small, 19 Pa. 461, 465 (1852).
 IN RE J.N. & L.N.

 2021-NCCOA-208

 Opinion of the Court

¶ 41 Here, regarding the Easement, we affirm in part and reverse in part.

 Defendants may make reasonable use of the Easement, which may include the

 parking of cars within the Easement area. Plaintiffs may make use of the Easement

 that does not interfere with Defendants’ rights to the Easement. This use may

 include, at times, the right to use the Easement for ingress and egress by vehicles.

¶ 42 Regarding the boat slips, we reverse, specifically the portion of the order

 directing that the deeds conveying Slip A to Plaintiffs and Slip C to Defendants be

 reformed. We conclude that Plaintiffs’ interest in Slip A is superior to Defendants’

 claim.

¶ 43 Regarding the costs and attorney’s fees, we reverse. Defendants are not the

 prevailing party, such that they are entitled to attorney’s fees, and neither party has

 brought or maintained a frivolous argument.

 AFFIRMED IN PART, REVERSED IN PART, MODIFIED IN PART.

 Judges MURPHY and WOOD concur.